1  YOLANDA BARRERA (SBN 91582)
   Attorney at Law
2  Email: ybarreralaw@gmail.com
   421 E. Huntington Drive
3  Monrovia, CA 91016
   Telephone: (626) 574-1053
4  Facsimile: (626) 574-9043

5  Attorney for Defendant
   David Diaz
6

7

8                  UNITED STATES DISTRICT COURT

9            FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                       WESTERN DIVISION

11 UNITED STATES OF AMERICA,        )   NO. CR 18-00173-GW-49
                                    )
12             Plaintiff,           )   REPLY TO GOVERNMENT'S
                                    )   OPPOSITION TO DEFENDANT
13             v.                   )   JUAN REYES'S MOTION FOR
                                    )   COOPERATION AND LAW
14 JOSE LANDA-RODRIGUEZ, et. al.    )   ENFORCEMENT WITNESS
   DAVID DIAZ (#49),                )   DISCOVERY; EXHIBIT A
15                                  )   (JOINDERS)
             Defendants.            )
16 _____)   Hearing date: 8-30-19
                                        Hearing time:10:00 a.m.
17                                      Location: Courtroom of the
                                        Honorable George H. Wu
18

19         Defendant, David Diaz, by and through his counsel of record, Yolanda

20 Barrera, hereby files his Reply to the Government's Opposition to Defendant Juan

21 Reyes's Motion for Cooperation and Law Enforcement Witness Discovery ("the

22 motion") which was filed as Docket 1727; Mr. Diaz joined such motion, docket

23 1727-1.

24 //

25 //

26 //

27 //

28 //

1    This Reply[1] is based on the attached Memorandum of Points and

2  Authorities, the Motion, and any Reply which may be filed by counsel for co-

3  defendant Juan Reyes.

4                                    Respectfully submitted,

5                                    /s/

6  DATED: August 19, 2019           YOLANDA BARRERA
                                     Attorney for Defendant
7                                    David Diaz

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
_____

26      [1]Several counsel for co-defendants in this case join in this Reply as it pertains to their
27  respective clients.  Consistent with this Court's October 30, 2018, Case Management Order,
    undersigned counsel has prepared a list of those attorneys who have joined this Reply and
28  such list is attached as Exhibit A.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Prior to July 12, 2019, several defense attorneys consulted with each other to prepare a list of discovery items which the defense believed the Government needed to produce regarding the impeachment evidence of the Government's witnesses, most of whom who are co-conspirators in the criminal conduct alleged in the Indictment.  On July 12, 2019, counsel for Defendant Reyes finalized the list of discovery requests and sent it to the Government.  When the Government failed to respond to the requested items, and after consultation with the defense, on July 29, 2019, counsel for Mr. Reyes filed the instant motion for discovery to compel such production.

On August 9, 2010, the Government filed its Opposition to this Motion. The Opposition is largely based on cases which are cited for propositions not at issue here and cases in which the Government misconstrues the holding. In general, the Government cites irrelevant case law regarding security concerns about the identity of "informers" rather than addressing the issue raised in the motion--the production of the identity and impeachment materials of **co-conspirators**. **This material  is clearly producible prior to trial**, as is discovery relating to law enforcement.  The only issue is the timing of such production.

## II. RELEVANT STATEMENT OF FACTS

In its Summary (page 6) the Government noted that this Court had issued a Protective Order to protect the Government witnesses; and that when the defense attorneys moved to modify the Protective Order, this Court denied those motions, "repeatedly citing the dangers that premature disclosure of the identities of cooperating witnesses would present."

What this Court stated when such motions were denied was that at that **early stage**, the limitations on viewing the protected discovery were not overly burdensome in "light of the potential risk of exposing cooperating witnesses".

1    That was October 12, 2018.  Now, almost one year later,  the defense

2    requests an order that the Government produce *Giglio* and *Brad*y materials now,

3    rather than 45 days prior to trial.

4    The Government accuses the defense of glossing over the Government's

5    safety concerns and states that it may ultimately decide not to call such witnesses

6    at a trial and that the Government may not have reasonably made such a

7    determination yet.  The Government describes the defense request as seeking "an

8    order that would endanger Government witnesses, and would likely dissuade

9    witnesses from testifying against a violent and intimidating prison gang." [page 7].

10   This argument is not supported by any facts whatsoever and it is an

11   obvious attempt to persuade this Court to make a snap decision unfavorable to the

12   defense by raising the frightening specter of violence toward witnesses.

13   However, this is an unusual case where the Government witnesses may be

14   worse offenders than the defendants charged.  Further, the witnesses' identities

15   must be disclosed since they are co-conspirators.  Finally, the defendants seek the

16   identity but also the impeachment evidence, referred to herein as *Brady* and

17   *Giglio*.  Many of the identities of the Government witnesses are known or strongly

18   suspected.  The impeachment evidence is necessary to properly prepare for trial.

19   What the defense attorneys seek is an opportunity to do their job and

20   provide the defendants with effective representation as guaranteed to them by the

21   United States Constitution.  Defense attorneys request the identities of the

22   witnesses as well as all *Giglio* and *Brady* information to be produced to the

23   defense team- not to the defendants.  Given this proposed compromise, the

24   Government's arguments against such production fail since the alleged

25   "paperwork" would not be copied and/or produced to the defendants.

26   The Government  argued that once the identities of the Government

27   witnesses are disclosed, they fear that "the result is violence and witness

28   intimidation." [Page 12].  This argument is nonsensical since if that truly was what

1  the defendants wanted to do, it could have been done already since most of the

2  identities are known.  Plus, this argument of expected violence and intimidation, if

3  accepted by the Court, would preclude ANY production- even 45 days before trial.

4       The Government's fear of violence is certainly not based on any

5  allegations of violence since this case started.  The Government's alleged fear of

6  violence is not substantiated by any facts which might have occurred since the

7  production of the discovery which suggests who the Government witnesses will

8  be.  And indeed  there have been no allegations of violence toward them.

9       Further, the Government's fear of "paperwork" being disseminated is

10  unfounded since the requested discovery would be produced pursuant to the

11  Protective Order.  Accordingly, no copies would be provided to the defendants.

12                              **III. ARGUMENT**

13          **A.  CRIMINAL CONDUCT ALLEGED AGAINST DAVID DIAZ.**

14       David Diaz is defendant #49 in this case.  Mr. Diaz is charged in counts

15  one, four and five which charge violations of 18:1962(d): Racketeer Influenced

16  and Corrupt Organizations Conspiracy; 18:1959(a)(1): Violent Crimes in Aid of

17  Racketeering Activity; 18:2(a): Aiding and Abetting and Causing an Act to Be

18  Done; and 18:1959(a)(5): Violent Crimes in Aid of Racketeering Activity.

19       A review of the relevant discovery indicates that the Government's

20  allegation of RICO conspiracy and VICAR counts against Mr. Diaz revolve

21  around alleged incidents which occurred on April 21 and 22, 2014.  More

22  specifically, the government alleged that on or about April 21 and 22, 2014, Mr.

23  Diaz and two other co-defendants unlawfully and knowingly conspired to kidnap

24  C.R. The Government further alleged that the orders for the carrying out of such

25  conduct were initiated by co-defendant Landa-Rodriguez.

26       As to this allegation, two other co-defendants were charged, Diana

27  Martinez and David Villalobos.  Both have entered guilty pleas.  At the trial, Mr.

28  Diaz expects that the Government witnesses may be some co-conspirators who

1    may allege they are aware of the order from Landa-Rodriguez, one or both of the

2    co-defendants charged (Martinez and/or Villalobos) and the alleged victim, C.R.

3            In addition, the Government alleges that Mr. Diaz and others engaged in

4    acts of violence inside the Los Angeles County Jail System to enforce Mexican

5    Mafia rules and discipline.

6            Although the Government alleges that all Rule 16 discovery has been

7    produced, there is not a single piece of evidence to support its allegation in the

8    Indictment that Mr. Diaz engaged in violent acts in the Los Angeles County Jail.

9    Thus, if the Government intends to proceed with this allegation, it must be based

10   entirely on the testimony of a co-conspirator.

11           Thus, as to Mr. Diaz, the production of co-conspirator discovery under

12   *Brady* and *Giglio* is exceptionally relevant and significant since it appears that the

13   core, if not only, evidence against Mr. Diaz will be co-conspirator testimony.

14           The Government has been investigating this case for many years; and the

15   alleged criminal conduct was in 2014, almost six years ago.  To expect that in 45

16   days Mr. Diaz can do the necessary investigation and prepare cross examination as

17   to the Government witnesses who will testify against him is patently unreasonable.

18                    **B.  LEGAL STANDARD GOVERNING DISCOVERY ORDERS.**

19           The Government begins its analysis in the Opposition to the Motion by

20   stating the obvious which is that a district court may issue protective orders in

21   criminal cases.  Indeed, it is true that the district court "may, for good cause, deny,

22   restrict, or defer discovery or inspection, or grant other appropriate relief."

23   Fed.R.Crim.P. 16(d).

24           In this case, this court has issued a Protective Order which requires that all

25   documents labeled as protected discovery can be reviewed by the defendant in the

26   presence of his defense team but he/she cannot keep a copy.

27           This Protective Order was the subject of a previous motion and Mr. Diaz

28   was one of the defendants who sought to have the Protective Order modified.  This

1    Court denied that motion and Mr. Diaz will not relitigate it here.

2         However, the Government brings up some of the same arguments to

3    oppose this additional motion for discovery.  Yet, the case law it cites in support

4    of its opposition is not helpful to a determination of this issue.

5         First, the defense are not seeking to have the Protective Order modified.

6    Rather, the defense is seeking to have *Brady* and *Giglio* materials be made

7    available to them now rather than 45 days before trial.  The materials can be

8    provided subject to the Protective Order, if this Court deems it is still necessary to

9    do so.

10        Second, the Government fails to address why it would produce the

11   discovery 45 days prior to trial but not now, six months before trial.  There

12   appears to be no reason.  The only apparent reason for withholding the identities

13   and the impeachment evidence is to disadvantage the defense and the corollary is

14   that the Government's case will be stronger given such defense failure to properly

15   investigate the case.

16        Third, the Government's argument that the 45-day production has been

17   done in other cases is not helpful in adjudicating this issue.  Each case should be

18   considered on its merits and no two cases are the same.  This case is particularly

19   complex and given the Protective Order, the preparation for trial has been

20   difficult.

21        Fourth, as to Mr. Diaz, the production of the requested discovery is critical

22   given the allegations, charges, and the expected witnesses. See above.

23        Fifth, the case law cited by the Government is not helpful.  For example,

24   the Government cited to United States v. Roberts, 793 F.2d 580, 587, vacated on

25   other grounds, 811 F.2d 257 (4th Cir. 1986) in support of its argument this Court

26   may limit, condition or absolutely prohibit the disclosure of discovery materials in

27   criminal cases if based on witness security.

28        However, the Roberts decision supports the defendants' request- at least

- 7 -

1    with respect to the co-conspirators who may not be testifying.  In <u>Roberts</u>, the

2    Fourth Circuit stated that most courts that have considered the matter hold that **the**

3    **statements of co-conspirators not intended to be government witnesses should**

4    **be discoverable under Rule 16(a)(1)(A) as imputable statements of**

5    **defendants**. Thus, that court ruled that Rule 16(a)(1)(A)'s reference to "statements

6    by the defendant" included any statements made by co-conspirators that have the

7    potential for being treated as evidentiary admissions of the defendant under Rule

8    801(d)(2)(E). <u>United States v. Roberts</u>, 793 F.2d at 583-584.

9        <u>Roberts</u> also stated that it did not read Fed. R. Crim. P. 16(a)(1)(A) as

10   absolutely prohibiting any pre-trial discovery of co-conspirator statements. That

11   Court held,

12       We hold, that is, that such disclosure is neither absolutely compelled nor
         absolutely prohibited by the relevant rules, but is to be allowed, or

13       disallowed, or conditioned in the discretion of district courts acting
         pursuant to Rules 16(a)(1)(A) and 16(d)(1).

14
<u>United States v. Roberts</u>, 793 F.2d at 588.

15       The Government cited to <u>Bowman Dairy Co. V. United States</u>, 341 U.S.

16   214, 221 (1951) for the proposition that district courts should be solicitous to

17   protect against disclosures of the identity of informants.  Yet, <u>Bowman</u> involved a

18   Rule 17, not 16 issue.

19       The Government's cite to <u>United States v. Hernandez</u>, 608 F.2d 741, 745

20   (9th Cir. 1979) is likewise unhelpful.  <u>Hernandez</u> was a case which involved the

21   production of the identities of "informers".  In that case, the issue was that the

22   Government had not provided the address of the "informer". Here, the issue is

23   totally different.  The defense is not seeking addresses; it is seeking impeachment

24   the confirmation of the identities of the Government witnesses as well as the

25   impeachment evidence and the issue is the timing of the production.

26       <u>United States v. Ruiz</u>, 536 U.S. 622 (2002) is equally unhelpful since that

27   case dealt with the issue of whether the Government must provide impeachment

28

1   information to a defendant prior to the entry of a guilty plea to ensure that the plea

2   is voluntary.

3   **C.  THE SAFETY OF THE POTENTIAL WITNESSES DOES NOT**

4   **REQUIRE THIS COURT TO SAFEGUARD THEIR IDENTITIES.**

5   After opposing the motion by referencing cases involving other issues and

6   referring to "informers" instead of co-conspirators, the Government argued that

7   the relief sought must be denied due to the concerns for safety.  Further, the

8   Government stated that Jencks Act discovery, even if material to the defense,

9   cannot be compelled until a witness has testified on direct examination.  The

10  Government cited to United States v. Bonilla, 615 F.2d 1262, 1264 (9th Cir. 1980)

11  and argued that in Bonilla the court found that the government may rightfully

12  withhold identity of cooperating witnesses until ten days before trial.  This is

13  inaccurate.

14  In that case, the Court noted that Bonilla was entitled to learn the

15  informant's identity because the informant was a percipient witness to the criminal

16  transaction but the defendant was not entitled to have the informant produced in

17  advance of trial.  The defense had requested the identity and that the informant be

18  produced for a pretrial interview. Such pretrial production is not requested herein.

19  The Government argued that if this Court grants the defense motion, it will

20  jeopardize the safety of the Government witnesses since once their identity is

21  confirmed, they will be subjected to retaliation and violence.  The Government

22  fails to note that although most of the individuals who are cooperating are known

23  to the defendants, no violence and/or dissuasion or retaliation has been reported.

24  In all likelihood, such lack of retaliation is because the witnesses have

25  already been placed in secure locations or because the defendants have no

26  intention of retaliating.

27  Further, the Government again references the alleged "paperwork" which

28  would be disclosed and could lead to retaliation.  Yet, the Government states that

1   the witness statements have been produced in discovery.  As noted above, no

2   retaliation has been reported. Also, the defendants have offered an alternative here

3   which is to produce the materials to the legal team, not to the defendants, and that

4   discovery materials be subject to the current protective order.

5           The Government argues that there is no prejudice to the defendants if the

6   *Brady* and *Giglio* materials are produced 45 days prior to trial.  The Government

7   questioned the defense's position that such late disclosure would affect its ability

8   to do the required and necessary investigation.  The Government noted, "the only

9   prejudice identified by defendant is a claim that once these witnesses' identities

10  are known and impeachment materials in possession of the government (such as

11  criminal histories and benefits received) have been produced, extensive further

12  investigation by the defense will be needed."  The Government complained that

13  the defendant did not explain the nature of the investigation which would need to

14  be done.

15          Defendants have no obligation to explain to the Government how they will

16  investigate the case.  In addition, the defendants should not have to rely on the

17  Government's word that it has turned over all impeachment materials.  In fact, it is

18  possible that the Government may be unaware of some impeachment materials

19  which could be uncovered after some defense investigation.

20          In making its arguments, the Government failed to acknowledge that in

21  criminal cases, pretrial

22          disclosure will redound to the benefit of all parties, counsel, and the court.
        Indeed, sound trial management would seem to dictate that Jencks Act
23      material should be transmitted prior to trial, especially in complex cases,
        so that those abhorrent lengthy pauses at trial to examine documents can
24      be avoided.

25  United States v. Gallo, 654 F.Supp. 463, 468.(E.D.N.Y. 1987)

26  *See also*, United States v. Percevault, 490 F.2d 126, 132 (2d Cir. 1974)

27
        ...we note that in most Pretrial discovery should be approached with a
28      spirit of cooperation among court and counsel in order to prevent those

- 10 -

1    burdensome trial recesses and also, we should emphasize, to protect the
2    government against postconviction claims of prejudicial surprise, see
     United States v. Baum, 482 F.2d 1325, 1331-32 (2d Cir. 1973), or claims
3    of suppression of material and favorable evidence, see Brady v. Maryland,
     supra.

4    **D.  THE REQUESTED DISCOVERY  WOULD NOT NEEDLESSLY**
5    **RISK THE SAFETY OF WITNESSES.**

6          The Government argued that information regarding informants not

7    testifying at trial is generally privileged and thus not subject to discovery.  Further,

8    because the parties do not yet know at this time which defendants will be

9    proceeding to trial, what groups of defendants will be tried together or the timing

10   of these groupings, the Government cannot determine which witnesses it will call.

11         This argument unnecessary obfuscates the issue.  By now, the Government

12   must know which witnesses it will call.  It does not matter which group defendants

13   are in; the Government who has been working on this case for many years must

14   already know whom it will call, for what purpose, and against whom.

15   **E.  DISCLOSURE OF THE REQUESTED DISCOVERY SIX**
16   **WEEKS PRIOR TO TRIAL IS INADEQUATE.**

17         The Government again resorts to conflating its argument with respect to

18   disclosure of identity of informers instead of addressing the Government witnesses

19   as they truly are which is co-conspirator's impeachment information.

20         Here, the Government witnesses are individuals who have participated in

21   the alleged conspiracy and have engaged in extortion, assaults, sales of drugs and

22   other similar types of crimes.

23         Where the disclosure of an informant's identity, or the contents of his
     communication, is relevant and helpful to the defense of the accused, or is
24   essential to the fair determination of a cause, the [informant's] privilege
     must give way.
25

26   Roviaro v. United States, 353 U.S. 53, 60-61, (1957)(holding trial court committed

27   prejudicial error in permitting the Government to withhold the identity of an

28   informer who was the sole participant, other than the accused, in the transaction

charged).

A defendant can establish a right to disclosure "where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988)(quoting United States v. Russotti, 746 F.2d 945, 950 (2d Cir. 1984)), *cert. denied*, 489 U.S. 1089 (1989).

To determine whether disclosure is warranted, a Court must do a balancing of the various interests.  Three factors need be considered: (1) the degree of the informant's involvement in the criminal activity; (2) the relationship between the defendant's asserted defense and the likely testimony of the informant; and (3) the government's interest in nondisclosure. United States v. Tenorio-Angel, 756 F.2d 1505, 1509 (11th Cir. 1985).

In this case, the informants are largely co-conspirators.  They were witnesses to and direct participants in all of the significant events surrounding the crimes charged. As such, they are crucial witnesses. *See* United States v. Roberts, 388 F.2d 646, 649 (2d Cir. 1968) ("the identities of these informants should be revealed to the defendant").

## IV. CONCLUSION

Based on the foregoing, it is respectfully requested that this Court grant the Motion for Production of Cooperation and Law Enforcement Witness Discovery.

Respectfully submitted,

/s/

_____
YOLANDA BARRERA
Attorney for Defendant
DAVID DIAZ

Dated: August 19, 2019

## JOINDERS

## REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT JUAN REYES'S MOTION FOR COOPERATION AND LAW ENFORCEMENT WITNESS DISCOVERY

| Attorney | Defendant | Defendant No. |
|---|---|---|
| Mark Windsor | Luis Vega | 2 |
| Meghan Blanco | GabrielZendejas-Chavez | 3 |
| Paul Blake | Alvino Munoz | 6 |
| Joel Koury | Hector Duarte | 15 |
| Thomas Nishi | Samantha Rivera | 16 |
| Jim Bisnow | Mark Landeros | 17 |
| Kate Corrigan | Jonathan Verdeja | 18 |
| Brian Newman | Cecilia Virgen | 19 |
| Richard Callahan | Laureen Garcia | 20 |
| Peter Johnson | Nancy Duarte | 21 |
| Peter Swarth | Genessis Blanco | 23 |
| Angel Navarro | Valentin Cordova | 27 |
| Robison D. Harley | Alvaro Leyva | 31 |
| John Targowski | Chris Ferriera | 32 |
| John Carlton | Andrew Pineda | 34 |
| Michael M. Crain | Miriam Meza | 36 |
| Mark Sedlander | Marlon Cornejo | 42 |
| James P. Cooper | Michael Bennett | 46 |
| Jay Lichtman | Edwin Ayala | 47 |
| Steven Brody | Robert Ramirez | 50 |
| Edward Robinson | Mark Martinez, Jr. | 54 |

EXHIBIT A

| | | |
|---|---|---|
| Carlos Iriarte | Amo West | 55 |
| Carlos Juarez | Oswaldo Quintero | 57 |
| Manuel U.A. Araujo | Christian Fuentes | 59 |
| Robert Schwarz | Juan NMN Garcia | 64 |
| James Tedford | Ramon Amaya | 67 |